J. IANDOLO LAW

8212 3rd Avenue, Brooklyn NY 11228
917.397.1577 Office
718.395.1732 Fax
JIandolo@jiandololaw.com
*Admitted in Ny & NJ*

September 21, 2026

***VIA ECF***

Hon. Carol Bagley Amon
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Anthony Grado
Criminal Docket No. 17-cr-559 (CBA)
Anthony Grado, Reg. No. 37665-053
**Request to Stay Imminent Transfer Pending Immediate Sentence-Calculation Review**

Dear Judge Amon:

I represent Anthony Grado, Reg. No. 37665-053, who is presently incarcerated at the Metropolitan Detention Center ("MDC") in Brooklyn. I understand that Mr. Grado is scheduled to be transferred to FCI Cumberland as early as Tuesday, September 22, 2026. Given the imminence of that transfer and the substantial discrepancy concerning Mr. Grado's sentence and time-credit calculation, I respectfully request that the Court immediately request that the Bureau of Prisons ("BOP") stay the proposed transfer and maintain Mr. Grado at MDC Brooklyn pending an expedited review of his sentence computation, Good Conduct Time ("GCT"), First Step Act ("FSA") time credits, medical needs, and family circumstances.

The urgency of this request is underscored by the BOP's own First Step Act time-credit printout. That document reflects 202 days of earned time credit that have not been credited toward Mr. Grado's release, and it further reflects a home-confinement eligibility date of July 2, 2026. In other words, the BOP's own records appear to establish that Mr. Grado reached eligibility for home confinement before he returned to MDC Brooklyn and that he presently has a substantial balance of earned credits that has not been applied.

Mr. Grado earned these credits during approximately eighteen (18) months in a Residential Reentry Center ("RRC") and continued earning credits during the more than sixty (60) days of subsequent incarceration. The BOP itself has confirmed that eligible individuals may continue to earn First Step Act time credits while in community placement, including an RRC, provided they continue to comply with the applicable requirements. The BOP has further implemented a Federal Time Credit Application system that identifies conditional placement dates and facilitates transition to community-based placement.

Under 18 U.S.C. § 3632(d)(4), eligible prisoners earn time credits through successful participation in qualifying evidence-based recidivism-reduction programs and productive activities. Those credits are applied toward prerelease custody or supervised release pursuant to § 3632(d)(4)(C) and 18 U.S.C. § 3624(g). The BOP's published guidance recognizes that earned credits can be used for placement in prerelease custody, including home confinement or an RRC, or toward supervised release, subject to the statutory eligibility requirements.

The significance of the 202 days is therefore immediate. If the BOP's own printout accurately reflects Mr. Grado's earned credits, those credits must be reconciled with the January 2, 2027 projected release date. The record presently available to counsel does not explain why 202 days of earned credit are not being applied or why Mr. Grado has not been placed in home confinement notwithstanding the July 2, 2026 eligibility date reflected on the BOP's records.

Counsel has further been advised that MDC Brooklyn will not undertake the necessary calculation or application of these credits. Counsel understands that if Mr. Grado is transferred to the CADRE facility (in the MDC), the credits will be calculated there and Mr. Grado may then be released. If that is in fact the BOP's position, it makes the proposed transfer particularly concerning. Mr. Grado should not have to be transported to another institution, over the course of weeks, simply to obtain the calculation and application of credits that the BOP's own records already reflect.

At a minimum, the BOP should immediately determine whether Mr. Grado is presently entitled to release from institutional custody, transfer directly to home confinement, or placement in an RRC, based upon the credits already earned. The BOP's own records should be reconciled before Mr. Grado is transported hundreds of miles away from his family.

Mr. Grado's current projected release date is reportedly January 2, 2027. I understand that this calculation already accounts for the fourteen (14) days of GCT that were taken as a disciplinary sanction arising from conduct while Mr. Grado was housed at an RRC. That deduction is not the basis of this request..

Federal law provides for Good Conduct Time under 18 U.S.C. § 3624(b). See *Barber v. Thomas*, 560 U.S. 474 (2010); *Sash v. Zenk*, 428 F.3d 132 (2d Cir. 2005). The Supreme Court has recognized that the BOP is responsible for computing federal sentence credits. *United States v. Wilson*, 503 U.S. 329, 334-35 (1992). The request here is therefore not that the Court undertake

the BOP's calculation, but that the BOP immediately perform and disclose an accurate calculation before transferring Mr. Grado.

The BOP should specifically reconcile the 202 days reflected on the time-credit printout with the January 2, 2027 projected release date and identify precisely how those credits have been treated. The BOP should also confirm the significance of the July 2, 2026 home-confinement date reflected on its records and explain why Mr. Grado remains in institutional custody notwithstanding that date.

The proposed transfer should be stayed while this review is conducted. Mr. Grado should not be transferred to FCI Cumberland when the BOP's own records indicate that he may already be eligible for release and that 202 days of earned credit have not yet been applied.

The circumstances surrounding Mr. Grado's placement independently support maintaining him at MDC Brooklyn while the review is conducted. Section 3621(b) requires the BOP to consider, among other things, the inmate's medical needs, proximity to his primary residence, and the inmate's preference concerning his placement. The Second Circuit has held that although the BOP retains discretion over institutional placement, it must consider the factors identified by Congress. *Levine v. Apker*, 455 F.3d 71, 85-87 (2d Cir. 2006)[1].

Mr. Grado's family circumstances are compelling. His mother died while he was incarcerated, and his only aunt recently passed away, while he was in MDC. His father is now in his late eighties and has significant mobility limitations. Mr. Grado is his father's only son. His father requires assistance from other family members to travel and visit him. MDC Brooklyn is approximately forty-five minutes from Mr. Grado's home, making regular visitation reasonably possible. A transfer to FCI Cumberland would impose a substantially greater geographic and logistical burden and, given his father's age and mobility limitations, could effectively prevent his father from visiting him.

Mr. Grado also has significant medical needs requiring continuity of care. He is experiencing serious dental problems requiring treatment, suffers from hypertension, and has diabetes requiring insulin. Section 3621(b) expressly requires consideration of an inmate's medical needs in connection with placement. Before any transfer occurs, counsel respectfully requests confirmation that Mr. Grado's insulin, medications, dental treatment, hypertension treatment, and other medically necessary care will continue without interruption, which they have not.

[1] *Levine v. Apker,* 455 F.3d 71, 83 (2d Cir. 2006) ("The BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility."); *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995) ("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility . . . ."). If, as Pedreira alleges, his transfer to the MDC and the May 15 determination regarding his RRC placement constitute unlawful agency action, I could only order the agency to make a new determination in compliance with 18 U.S.C. § 3621. *See Levine*, 455 F.3d at 87 (holding that the BOP "must consider" the §3621(b) factors without reference to its improper regulation); Pimentel v. Gonzales, 367 F. Supp. 2d 365 (E.D.N.Y. 2005) (ordering BOP to consider halfway house placement in light of § 3621(b) and without reference to the BOP's improper policies or regulations).

Counsel recognizes that the BOP, rather than the Court, has primary authority over institutional designation and placement. See *Levine*, 455 F.3d at 83; *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995). Accordingly, the relief requested is narrow. Mr. Grado is not asking the Court to permanently dictate his place of confinement. Rather, counsel respectfully asks the Court to request that the BOP preserve the status quo and maintain Mr. Grado at MDC Brooklyn while it immediately verifies and applies his sentence credits and determines whether he is presently eligible for home confinement, prerelease custody, supervised release, or release from BOP custody.

The requested relief is particularly appropriate because the transfer is reportedly scheduled for tomorrow, September 22, 2026. If Mr. Grado is transferred before the BOP reconciles its own records, an unnecessary transfer may occur at precisely the time when those records indicate that he may already be eligible to leave institutional incarceration.

Accordingly, counsel respectfully requests that the Court urgently request that the BOP stay Mr. Grado's transfer to FCI Cumberland and maintain him at MDC Brooklyn pending an immediate review of his sentence computation. Counsel further respectfully requests that the BOP reconcile the time-credit printout reflecting 202 days of uncredited time with Mr. Grado's current projected release date of January 2, 2027, and confirm the significance of the July 2, 2026 home-confinement eligibility date reflected in the BOP's records. The BOP should also determine and apply all FSA time credits earned by Mr. Grado, including credits earned during his approximately eighteen months in an RRC and his subsequent incarceration, and determine whether, based upon those credits, Mr. Grado is presently eligible for immediate release or another form of release from institutional custody. In addition, counsel respectfully requests that the BOP determine and disclose Mr. Grado's current Good Conduct Time balance, including whether additional Good Conduct Time has accrued since July 28, 2026. Finally, before undertaking any transfer, counsel respectfully requests that the BOP consider Mr. Grado's significant medical and family circumstances, as well as the other factors required under 18 U.S.C. § 3621(b), including the proximity of the facility to his family and his medical and programmatic needs.Given the September 22, 2026 transfer date, counsel respectfully requests the Court's immediate attention to this matter and, if possible, immediate communication with or recommendation to the BOP that the transfer be stayed until these issues have been resolved.

Nothing in this letter constitutes a waiver of any of Mr. Grado's rights, claims, remedies, or objections concerning his sentence computation, Good Conduct Time, First Step Act credits, institutional placement, home confinement, prerelease custody, RRC placement, medical care, or any other matter. Mr. Grado expressly reserves all such rights and remedies, including any remedies available under 28 U.S.C. § 2241 or otherwise.

Thank you for Your Honor's immediate attention to this matter. Please contact my office at your earliest convenience so that this issue may be addressed without the necessity of further intervention.

Very truly yours,

Jeremy Iandolo, Esq.